Good morning, and may it please the Court, my name is Alex and I am here on behalf of the Plaintiff Appellant Patrick Ghiorso, and this is a case arising under Montana's substantive law. There are two issues in this appeal, in this insurance case. The first is whether this policy that American General sold Mr. Ghiorso's brother, Julia, qualifies as disability insurance. And doesn't the previous decision of the Montana Supreme Court answer that for us? Yes, I would submit that under GOLT and the statute that this policy provides, insures a human being and provides a death benefit for that accident. Yeah, I have no idea why the Montana Supreme Court thinks that's disability insurance, but it apparently is. So let's get to the next step. Does the clause in the policy conflict with the statute that governs disability insurance? Yes. And first, before answering that, the medicine provision, there's been some briefing on whether that's part of the coverage grant or whether that is an exclusion. As we pointed out in our brief, both exclusions and words of imitation in Montana are strictly construed against the insurer and analyzed the same way. There's been some dispute in how we read the Rebe case and also Wetzel, whether this really is part of the coverage grant or an exclusion. And I would point the court to the discussion in both of those decisions and how we allocate burden is on who is this policy provision favoring. Does it favor the insured or does it favor the insurer? And the reasoning behind that is if an insurer is relying on an exclusion, it benefits it to get rid of coverage. So when looking at the medicine exclusion, we believe that it does benefit American general and therefore should be construed as an exclusion. Well, the policy says we won't cover death from medicine unless it's a certain type. Correct? If it's... Unless it's been narcotic under the prescription of a... Yes. So that's actually from the statute. Minister, provide the advice of the physician. Minister, provide the advice of the physician. Okay. So that... Okay. So that's what the policy says, whether it's an exclusion or a coverage policy. Why does that conflict with the provision in Montana law that says here's what... You can't exclude more than this. Well, but the policy says excludes the accidental death caused by medicine. Right. Yes. So the policy... That's what the code says, unless administered. Right. So that's the statute that provides the exception. Right. So tell me why there's a conflict here. So here in the policy, medicine, it doesn't matter... Thank you. ...the use of a physician. For example, if you just took some medicine, it doesn't make any mention of that. The statutory scheme then, and as we've pointed out, the purpose of the exception is to provide coverage for the legitimate use of a prescribed substance from a physician, but to exclude, you know, any other use that isn't pursuant to a physician's advice. Okay. So let's assume I agree with you that there's a conflict. I want to get to the question. Okay. That we asked you to address today. What do we do with... And neither party briefed it, and the district court didn't deal with it. What do we do with the provision in 3322-1011? So we read that into the... And now you're referring to the narcotic provision in the statute. No, I'm referring to the provision that says that seems to exempt A&D policies from the conflict, the provision that you think conflicts with the policy. Okay. So the exception in... And I apologize for confusing this, but that's the question we asked you to address. When I read on the face of that statute, it seems to say we have all these requirements for policies, but they don't apply when the policy is a life policy or a policy covered by the statute. And GOLP tells me that this is both a life and a disability policy. So why does the provision that you think conflicts, the statutory provision that you think conflicts with the policy, apply in this case at all? Okay. So if we read subsection C, which the Court cited in its order, it talks about life insurance endowment annuity contracts or supplemental contracts, and then subsection 1 below that says provide additional benefits. But we have an interpretation from the Montana court that says additional benefits just means benefits. It doesn't mean benefits on top of those in the policy. Well, I think still if we look at the accidental death benefit, it's not additional to anything. It's stand-alone. So your position is that this doesn't apply because it's stand-alone? It's stand-alone coverage. But didn't GOLT hold that? GOLT says it rejected the argument in GOLT. I mean, the reference to additional benefits, when we look at the definition of life insurance, means anything more than the covered amount. And GOLT also, it didn't directly address the statute. A different statute, but it says the word additional benefits, when life insurance is defined, just means the benefits that the policy provides. It doesn't have to be double indemnity or something on top of it. So it in effect read the word additional out of the word, out of benefits, didn't it? No, I don't think so, because GOLT also involved two insurers, and there was double indemnity. So there was two separate layers. Here, we don't have a second layer. We just have one layer. Because under that reading, there would be no case in which accidental death benefit or an accidental death coverage would fall under disability insurance, which would also contradict GOLT, which held that accidental death coverage is disability insurance. And then... Explain that to me. I'm not sure why it would mean that no case fell under. It would just mean that cases where, it would just mean that the exclusions, the statutory provisions, don't apply to these kinds of cases. You'd still have accidental death coverage, wouldn't you? But the purpose of the statutory scheme is to provide protections for these stand-alone coverages. And I understand, with what you're referring to in GOLT, the double indemnity language. But again, I think in this case, since the Montana Supreme Court hasn't interpreted the statute, we're left with the... So now let me ask you the $64 question. Should we ask the Montana Supreme Court to weigh in on this? Well, I think, of course, that would be an option. But I think also applying the statutory interpretation canons of the Montana Supreme Court, why the statutory scheme exists, that it's to protect policy beneficiaries. And we have... But that just means, surely the court hasn't said the policy beneficiary wins every time we interpret the statute. No, no. Almost. By the way, that's the way I read their jurisprudence on this. I can't figure out why this life insurance policy is a disability policy. But they say it is, and it's Montana law. And that's what makes me uncomfortable about reading this provision, unless you guys can clear it up for me, because I don't know how they're going to read it. Let me ask you a couple of questions other than what he's asked. Even if I get down to this idea that I have an exclusion under the policy which is not as favorable to the insured as unless administered on the advice of a physician, don't I still need to, if you will, remand this to get evidence on whether the deceased was under the influence of a narcotic? I think the court could still address that, because the district court in her order found that the exclusion was... I mean, it seems to me that if I go with the Montana statute, which you say I should go with, it says that the insured shall not be liable for the loss contracted in consequence of being intoxicated or under the influence of a narcotic unless administered on the advice of a physician. When I read what it is that this person passed away for, I am unclear that this happened under the influence of a narcotic. I'm under... Based on this record, I might say maybe advice of a physician, but I'm not sure it was the narcotic at all. Why would I not have to reverse and say, you know, somebody's got to take some evidence? Well, I think on the record before the court, and there's also a dispute of how we interpret narcotic, is it limited to strictly opiates or is it limited to controlled substances and prescription drugs? That's all reverse and start again, District Court, and address those good issues. Well, the District Court also found, I believe in her order, that Ms. Rushing-Dwarso did pass away from a prescription drug overdose. But was it a narcotic prescription drug overdose? The problem is narcotic, because there are prescriptions in there that are not narcotics. Depending on if we're looking at the strictly medical definition or under our... Well, under the policy, it's all I'm doing is what it says. And now I'm looking not only under the policy, I'm looking under the statute. And what does it mean? I think it comes down to whose burden is it to show. But that doesn't answer the question. Whose burden it is makes no difference to me. District Court can determine that when we get back there. Yeah, and the District Court didn't make a specific determination. Let me ask you the second question then. It doesn't seem to me that anyone in this particular instance has been arguing this is a life insurance policy. No, we made an argument below and much shorter in our brief on appeal that this was disability insurance and not life insurance. Did your opposition ever say this is a life insurance policy? No, they argued that it was a miscellaneous insurance policy under the casualty. That's what the District Court took? That's what the District Court agreed with, yes, Your Honor. So then if nobody's arguing this is a life insurance policy, why is it that 33-22-101 applies at all? It only applies to life insurance policies. 32-22-101, Your Honor, I believe that's the exception statute. Yeah, that's right. You don't want it to apply. No, and we don't believe it applies. Because you say this is put aside the double indemnity additional benefits. Your argument, I take it, although there was no argument made, but I'm making up one for you to see if you agree with it, is that this only applies to life insurance policies and this is not a life policy. Yeah, that's what I thought you were arguing, and I'm just trying to get that on the record. What are you saying about that? Because I'm trying to put it right out there. That's why I ask you the question. It seems to me your argument is this isn't a life policy. Nobody argued a life policy, and therefore it doesn't apply in any event. But you never have said that. So I'm trying to figure out is that your argument? Yes. Because since we made you argue this in the first place, I want to know what your argument is. Yes, that is our position. Okay, so now let me go back and see if I can explore that. Because the Montana Supreme Court says in gold that these are both AD&D policy, if you will, is both a life and disability policy. Given that characterization, does it matter what you call it? No, and it doesn't, as long as it is disability insurance. No, I understand, but why isn't it? You're not listening very carefully to his question. Why isn't it also life insurance then, too? Because they've called it both. So if we look at the definition of life insurance, and I'm not aware that this has been ---- Well, but this is gold. Gold deals with exactly the same kind of policy we have here, right? Mm-hmm. Involved in AD&D policy, yes. And they said this is both, under Montana law, this is both a life and disability policy. And that was looking at conversion benefits. But even if it is life insurance, I still don't think this exception to the disability insurance scheme applies. Okay. But I understood that. But I want to get back to the first point, to what Judge Smith was asking you about. So is this life insurance for purposes of this subsection or not? Whether the statute is referring to an exception for life insurance? Yes. Under 33-22-101, subsection 1, is the policy at issue in this case life insurance? I do not believe it is. But I guess that's what he's asking you. And this is what I was going to go to. I know what Galt says. Galt says this is both disability and life insurance. Are we then saying that we can parse the policies now such that one is disability but not life? Because it's disability and it might also be what the district court thought it was, miscellaneous. So we're saying it could be three. We say it can't be miscellaneous, so it's got to be disability. But I'm really trying to get your input in. Can it be anything but both, given Galt? I think if we look at the coverages as a whole, the policy as a whole, it could be both. But the statute that we're looking at, the exceptions. Does Galt suggest it can be one or the other? I think Galt suggests it can be both, but the type of benefit is what we need to look at, because this policy has multiple different benefits. I mean, it includes the things listed here, but it also has a paralysis benefit, for example. So when the exception refers to additional benefits to take it out of the disability insurance scheme, I think we need to look at not just the coverage as a whole, but we need to look at the type of benefit that's being provided. I understand your argument about that. Okay, thanks. All right. Thank you. And I have about 30 seconds left. Could I reserve that, please? Yeah, sure. Thank you. Thank you, Your Honor. May it please the Court, my name is Bill Maddox. I am the attorney for American General Life Insurance Company in this case. I think that as an initial proposition, you need to start with what the law is with regard to how you interpret an insurance contract, any insurance contract, including the one at issue here. And the law of this circuit is very clear, set forth in the Stanford Branch case, that in interpreting an insurance contract, the court must first look to the insuring agreement and determine whether coverage exists. And you do that by looking at the granting clause, the insuring agreement. So I think everybody agrees that there's no coverage under the language of the policy. I think, at least I start from that proposition. What your colleague says is, well, the policy in that case violates the statute because the statute doesn't allow you to deny coverage under certain circumstances, i.e., when the accidental death results from medicines taken under the care of a physician. I'm rephrasing it. And so what's the answer to that question? I mean, the answer to that is you first have to have a loss that falls within coverage. What he's talking about here is a loss that falls within coverage. Roberts. Well, but accidental deaths, we all agree accidental deaths fall within coverage. Well, accidental deaths. You have a definition of accidental death here which excludes this set of circumstances. And the question is whether or not that definition somehow conflicts with the statutory commandment. Are you telling me the statute doesn't apply to this policy? No. What I'm saying is that the statute, with the exclusion that they want to read into the grant of coverage, does not apply in this circumstance. We don't. So your position, so I understand it, is that the statute only deals with the language of policy exclusions. It doesn't deal with the language of policy coverage. Right. Absolutely. It says that an insurance policy may. It's a permissive exclusion that a policy may have. And it says you may have this exclusion. But there is no law in the State of Montana that defines accidental injury and says that if you write what's a life insurance policy, a disability policy, that if you write a policy, you have to have a definition of accidental injury, and here's what it is. So let me give you a definition, a hypothetical, so you don't have to tell me it's not this case. Let's assume I have a policy that says it covers all accidental deaths, and it's a very broad wording, and it says, and the policy has an exclusion that says but not accidental deaths caused by, pick up the language of the area, pick up the language of the Montana statute, not accidental deaths caused by narcotics taken under the supervision of a physician. And that's your exclusion. Do you agree that exclusion would be inappropriate? Yeah, because that's kind of, I think it's kind of backwards. If you have a broad policy, it says we cover all deaths. No, I meant it to be backwards. Sure. I meant it to be backwards. So now I'm asking, you've got a broad policy and exclusion that can put you in this position. Right. So you have a very broad policy that says we cover all accidental deaths. And then you have an exclusion. Yeah. From any cause whatsoever, we cover any accidental death, and it's a broad description. And then you have an exclusion that says, but we don't cover accidental death if it's caused by somebody being intoxicated or under the influence of a narcotic.  You've now repeated my hypothetical. Tell me, is there coverage under that circumstance? Under that circumstance, then the question then is, well, was the narcotic? Assume that it was. Assume that it covers, that it meets the statutory definition. Yeah. If it was administered on the, by, you know, your doctor prescribed it, he gave you the narcotic, and that caused or contributed to the death, then yeah. Then that exclusion would say, well, I'm sorry, that broad exclusion is, that doesn't fly. Now, okay, so your position is that coverage, that the policy, that the statute only applies to exclusions, not to definitions of coverage? Absolutely. Aren't they the same? They're not the same. In realistic terms? They're not the same. And if you look at the Ribby case, I mean, that's a classic example of how the Montana  Ribby is a case that involves a grant of coverage. You had a case there that provided, a policy that provided coverage for bodily injury or property damage caused by an occurrence. And there was a definition of occurrence. And the definition of occurrence was it was caused by an accident, the consequences of which were neither expected or intended from the standpoint of the insured. The plaintiff in that case made the same argument that the appellant is making in this case. They looked at the language that said expected or intended from the standpoint of the insured, and they said, no, no, no, that's an exclusion. So they're trying to shift the burden of proof from themselves. But was there a statute in that case, was there a statute that forbade such an exclusion if it were to run? No. Not that I'm aware of. See, and here there's a statute that seems to forbid a certain type of exclusion. And what you're saying is we can get around that by defining our coverage. Well, yeah. Because there's no statute in mind. I think a good example is one of the cases they cite is the Smith case from California, which is a case where there was California law-defined accident for the purposes of the policy at issue there. The policy definition in that case didn't control. The statute controlled. And the statute in California said this is the definition of an accident. And everybody agreed that. So what you're really arguing, it seems to me, is that simply because your policy defines accidental injury as accidental bodily injury, which is unforeseen and suddenly sustained without design or intent of an insured, and then puts that is not caused or contributed to, that that's better than the exclusion if, A, we're not under simply the definition, but they had stopped at the end of insured person and put period, and then put exclusion over under exclusion not caused or contributed to, that that would make a difference? Yeah, I mean, that's our definition. Frankly, I'm trying to figure out why. Why? Why because you, your insurance company, and I appreciate your situation because I was representing insurance companies all my life, but why is it simply because you put the definition, put it in the definition section, that it's nonetheless an exclusion, any different than putting it in the exclusion section, which nonetheless excludes it? Why is it any different? Because the insurance company has a right, in the absence of statutory requirements that say you can't, the insurance company has a right to define the limits of the coverage that it's providing. So why doesn't the statutory, that's the question we're both asking in different ways, we have a statute that says you can't have an exclusion that says what this last clause says. We agree on that, don't we? What the last clause says? Sure. If you had an exclusion that said it is not an accidental death if, and then read A, and that was your exclusion, and the accidental death occurred from taking a prescription drug under the direction of a physician, you would agree that the statute would override that exclusion. Not the way you phrased it. I know, because I haven't phrased it precisely. And that's one of the issues that we have in this case is that the plaintiff, the appellant kind of plays fast and loose a little bit with the definition of the statute. Don't deal with the appellant. Deal with my question. Let's assume you had a statutory exclusion. Let's assume you had a coverage provision that read exactly like the statute. Okay. Which is what they want to do. They want to, because they have argued that we're not talking about this. I know that's what they want to do. Well, I want to know your answer to the question. Okay. So the reading? A coverage provision that conflicted with the statute. Stop. Stop. Let me finish. Let me finish. Let's assume you had a coverage provision that conflicted, that if it were an exclusion, would conflict with the statute. Okay. Are we with each other? I think so. Okay. And what you're saying is that's okay because it's a coverage provision, not an exclusion.  No, no. Don't answer me what the plaintiffs want to do. So a coverage provision. So a coverage provision, a coverage provision that if it were an exclusion, because the coverage provision says we cover everything except. Take that except clause. If that except clause were an exclusion, it would conflict with the statutory  Yeah. So here if you have a coverage provision. So that's my hypothetical. Okay. So you have coverage. Easy answer. Easy answer, yes or no. Under that circumstance? As I understand the question, I think yes, because I think if we're saying we cover accidental death, accidental injury, and here's our definition of accidental injury, and it excludes accidental injury caused by taking medicine, including a narcotic. Right, right. That's prescribed by a physician. Then I think, yeah, then you run into a problem because Montana law certainly suggests that you can't exclude that. So, okay. So, good. Now we understand each other. So this definition goes farther. This definition plainly excludes accidental death caused by a narcotic prescribed by a physician, doesn't it? Well, it excludes accidental death caused by medicine. Right. Which your position is doesn't include the death that the insured suffered here. Right. So why isn't it? If that's true, we're back to Judge Smith's question. Well, so I'm saying Did Montana pass this to say, gee, insurance companies, you can get, as long as you're clever enough to put all your exclusions in the definition of accidental death, these provisions don't count? Well, first, again, I think it's not an exclusion. It's part of the grant of coverage. And in the absence of Well, you said that, but answer his question. I mean, we understand your argument. Right. I think it's, well, again, it's not an exclusion. If you're saying, if you consider it to be an exclusion in this case So it has to be formally an exclusion. I think it's got to be formally an exclusion. But if it's not, if you were to take that language of the exclusion and say, you know, we don't cover death caused by medicine unless it's prescribed by, unless you're under the influence of a narcotic prescribed by a physician or administered on the advice of a physician, they still don't win this case. Well, that's the next question. Supposing I say A is an exclusion. Okay. Then it seems to me that if A is an exclusion, then it conflicts with Montana Code 3322 through 31, does it not? If it's an exclusion. That's what I said. Right. If you lose and I say that's an exclusion, then it seems to me it conflicts, does it not? It only conflicts to the extent that it would deny coverage to someone who had an accidental injury or death that was caused or contributed by them being under the influence of a narcotic. Okay. So now we're back to Judge Smith's question before. Of a narcotic. So only to that extent. Isn't there at least some evidence in this case that would create a triable issue of fact? I don't believe so. I mean, the only evidence. They found narcotics in her body. The only evidence we have and all of the evidence that we have is in the record. This was decided on cross motions for summary judgment. That doesn't make any difference. The bottom line is I cannot determine whether in this situation, given all the evidence, cross summary judgment or whatever, that this person died under the influence of a narcotic administered on the advice of a physician. Because there are non-narcotics which were provided to the same person. And he died. And I don't know who caused the death or who didn't. And therefore, I don't know whether it was under the influence of a narcotic or the influence of a non-narcotic for which he died. Even setting aside the narcotics. I don't. I have to have an evidentiary hearing to determine what was the cause. Was he under the influence of a narcotic? Well, there's no evidence of the person being under the influence. Well, there is evidence that narcotics were in her. In the person's system. In the insurance system. There are people that take narcotics. Is that enough to create a – so if I'm a – let's assume we're – let's assume we have a case in which the question is, did the person die under the influence of narcotics? And you move for summary judgment as the insurance company and you say, it's, you know, I'm doing a Celotex motion. It's your burden of proof, Mr. Plaintiff, so come up with something. And he comes up with this autopsy report which says, gee, she's got a bunch of drugs in her system and one of them is a narcotic. Is that enough to avoid summary judgment? Well, I guess it would establish that there were narcotics in the system. The question then, in my mind, becomes, was this person under the influence? And where's the evidence that the person was – That's the question. The question I'm asking you, is this evidence – would this be evidence sufficient to get past summary judgment? Well, I think it would because I think that simply having a narcotic in one's system does not establish that the person is under the influence. There are people who take narcotics, who take opioid medications. In order to work, they can drive, they can operate machinery. It's a question of fact and can't be determined on summary judgment. Let me ask the question differently. Sure. Did the district court decide this issue? I thought the district court just said no problem here. Yeah, well – So now you're asking us in the first instance to decide a summary judgment motion. And I think you were here before when we said why don't – if that's the case, why don't we ask – if we really think this is the issue, shouldn't we ask the district court to address it in the first instance? Well, I suppose that that's an option. If you feel that the evidentiary record is not sufficient to support the summary judgment motion, that's a different issue than what we're talking about. Right. That's not the one in front of us. Yeah. It doesn't go to the policymakers. But we're simply saying, you know, we have – we think that there's an insufficient evidentiary record. Then I suppose an option for this Court would be to remand and say have an evidentiary hearing and see how the evidence shakes out. Judge Smith, he's out of time, but I really do want to ask him one more question. Well, I appreciate you. You've never stopped before. Okay. I've got one before you. Okay. So go ahead. Counsel, you're up here. So I guess the last question that I have for you is what is the effect of 3322-101-1? And I waive my question. Because it seems to me I had his idea. Now I'd like yours. In terms of whether this is a disability – Supposing that this is a disability policy and that now we have a disability policy and it's an exclusion, and this exclusion is in conflict with Montana statute, this 3322-101, what effect does it have to this decision? Well, I mean, if you're considering it to be life insurance as opposed to disability insurance. So you're suggesting in that event, since they only want it to be disability insurance, the fact that this says it's life insurance makes it inapplicable whatsoever. Well, my argument on that is that it doesn't matter whether you consider it to be disability insurance, whether you consider it to be life insurance or miscellaneous insurance. I say you still have to fall within the initial grant of coverage. No, I understand. No. We understand that. I understand that. Let's assume you lose on all the issues in the case and we're forced now to figure out whether 33 – whether this subsection applies. Why does it apply or not apply in your view? Well, I think, you know, if what we're saying is it's life insurance and it doesn't apply, if that's how you come down on this case, and that's kind of where Galt was, because Galt is an odd – I don't want to say it's an odd case, but it's a case that I don't think really has any direct application. First, you're dealing with group policies, not individual policies. This is an individual policy, and it only dealt with conversion rights. And basically it said because you can have these overlapping coverages, I think that all that statute really says. So as I understand it, neither of you think this exception applies? I think that's fair. That's all I wanted to know. Thank you. I know I have very limited time. I just wanted to make one point with respect to the discussion about exclusions and initial coverage grants. I would just point out that the statutory scheme uses the word provisions. There should be no provision that's less favorable. That's really what it goes to. It doesn't give insurance companies the ability to say, well, this limited language is a definitional exclusion, so therefore it's not governed on the statutory scheme, or this is what we would classically think is an exclusion. So I would just make that point. I would only say the following. First of all, Judge Fischer, did you want to ask him any questions? No, I want to cover the territory. All right. Thank you very much. I would just like to say thank you both. Thank you for coming from Montana, because to be fair, you've got a 9-0 kid and a Arizona kid and a California kid, I guess, who are trying to understand this Montana morass of statutes as it relates to insurance. And it's good to have two good Montana attorneys come and help us. The last thing you said gives me great comfort, which is that you had trouble understanding it yourselves. Thank you. Amen. So case 1635943 is submitted, and I thank you both for being here. Thank you so much.
judges: Fisher, N.R. Smith, Hurwitz